UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROBERT ZENAS WHIPPLE, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-CV-148-RLJ-SKL |
| | ) |
| TENNESSEE BOARD OF PAROLES, | ) |
| ZANE DUNCAN, GARY FAULCON, | ) |
| BARETT RICH, COLUMBA McHALE, | ) |
| ROB CLARK, DARYL BEARD, | ) |
| MADELINE BROUGH, ERIC FULLER, | ) |
| TORREY GRIMES, BRETT COBBBLE, | ) |
| DUSTIN BROWN, C/O McBRIDE, and | ) |
| CHRIS ODENBERGER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Acting pro se, Robert Zenas Whipple, III ("Plaintiff"), a prisoner in the custody of the Tennessee Department of Correction ("TDOC") now housed in the Bledsoe County Correctional Complex ("BCCX"), brings this civil rights action for injunctive, declaratory, and monetary relief under 42 U.S.C. §§ 1983, 1985 and 1986 [Doc. 8]. Plaintiff's primary claim is that Defendants retaliated against him and conspired to retaliate against him by denying him parole. Defendants are the Tennessee Board of Parole; Parole Board Members Zane Duncan, Gary Faulcon, and Barett Rich; Parole Board General Counsel Columba McHale; Parole Board Assistant General Counsel Rob Clark; BCCX Parole Officer Daryl Beard; State of Tennessee Assistant Attorneys General Madeline Brough and Eric Fuller; TDOC Staff Attorney Torrey Grimes; BCCX Associate Warden of Treatment Brett Cobble; BCCX Grievance Board Chairman Dustin Brown; BCCX Site 2 Mail

Room Officer McBride; and BCCX Information Technology Department employee Chris Odenberger.

## I. THE FILILNG FEE

Plaintiff has also filed an application for leave to proceed *in forma pauperis* and a second such application, with the second application being accompanied by a certified copy of his inmate trust account statement [Docs. 2, 14]. The first application, along with the inmate trust account statement supplied in the second application reflect that Plaintiff lacks the financial resources to pay the full filing fee all at once [Docs. 2, 14].[1]

Accordingly, Plaintiff's first application to proceed *in forma pauperis* [Doc. 2] is **GRANTED**, and he may proceed in this lawsuit without prepayment of the filing fee. However, because Plaintiff is a prisoner, he is **ASSESSED** the civil filing fee of three hundred and fifty dollars ($350), though he will be permitted to pay the fee on an installment basis. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) (incarcerated prisoners are required by statute to pay the filing fee), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Pursuant to 28 U.S.C. § 1915(b)(l)(A) and (B), the custodian of Plaintiff's inmate trust account at the BCCX is directed to submit to the Clerk, U.S. District Court; 900 Georgia Avenue, Room 309, Chattanooga, Tennessee 37401, as an initial partial payment, whichever is greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b)

---

[1] Because Plaintiff did not submit his inmate trust account statement to support his first application for leave to proceed *in forma pauperis*, the Court entered a deficiency order notifying him that he should submit the trust account statement within thirty days [Doc. 4]. Not only did Plaintiff respond to the order by filing the required trust account statement, but he also filed an additional *in forma pauperis* application, despite the fact that his first application remained pending for disposition.

twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10), until the full filing fee of three hundred and fifty dollars ($350), as authorized under 28 U.S.C. § 1914(a), has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Order to the custodian of inmate trust accounts at the BCCX to ensure that the inmate trust account custodian complies with that portion of the Prison Litigation Reform Act relating to payment of the filing fee. The Clerk further is **DIRECTED** to forward a copy of the Order to Tony C. Parker, TDOC Commissioner, and to the Court's financial deputy. This Order shall be placed in Plaintiff's institutional file and follow him if he is transferred to another correctional facility.

Plaintiff's second application for leave to proceed without prepayment of the filling fee [Doc. 14] is **DENIED** as moot.

I.  **SCREENING and LEGAL STANDARDS**

The Court must now review the complaint to determine whether it states a claim entitling Plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If so, this suit must be dismissed. In performing this task, the Court bears in mind the rule that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [§§ 1915A(b)(1) and 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *See Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The Court examines the claims in the amended complaint[2] under these guidelines.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff asserts claims for a retaliatory denial of parole and a retaliatory conspiracy to deny him parole, to inflict cruel and unusual punishment upon him, and to deny him access to the courts, due process, and equal protection [Doc. 8 pp.1-2]. In addition to his federal claims, Plaintiff presents state tort claims for intentional infliction of emotional distress and for negligent infliction of emotional distress [*Id.* at 2, 21-22]. Plaintiff sorts his claims into fifteen counts: Conspiracy (Counts I–VI); Retaliation (Counts VII-VIII); Access to Courts (Count IX); Cruel and Unusual

---

[2] The Court screens the amended complaint [Doc. 8], which replaced the original complaint [Doc. 1]. *See B & H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 n. 8 (6th Cir. 2008) (explaining that a prior "complaint is a nullity, because an amended complaint supercedes all prior complaints" quoting *Drake v. City of Detroit*, No. 06-1817, 2008 WL 482283, at *2 (6th Cir. Feb. 21, 2008)).

4

Punishments (Count X); Due Process (Count XI); Equal Protection (Count XII); and State Torts of Intentional and Negligent Infliction of Emotional Distress (Counts XIII-XIV). The last count, Count XV, is not a cause of action at all, but instead an application for a common law writ of certiorari.

Plaintiff first contends that he was denied parole as a reprisal for his repeatedly writing letters to TDOC Attorney Grimes requesting documents under the Public Records Act. Plaintiff believes that Defendant Grimes resented these requests. In January of 2017, Defendant Grimes tried to prevent Plaintiff from using privileged mail envelopes, and she did so to retaliate against him for his use of the Public Records Act. Grimes' cited conduct interfered with Plaintiff's prosecution of two "active" civil rights lawsuits.

Plaintiff was not provided the documents he sought under the Public Records Act. Plaintiff then sued the Parole Board for access to his records. Defendant Brough represented defendants in the Parole Board lawsuit. In settlement of the case, the Parole Board paid the filing fee, reimbursed Plaintiff $1.65 for copying costs, and supplied him with his non-confidential parole records. Plaintiff believes that Defendants Duncan, Faulcon, Rich, McHale, Clark, Beard, and Brough experienced humiliation and anger because they had to settle a lawsuit with a mere prisoner.

Plaintiff next claims that he was denied parole to retaliate against him for filing a second § 1983 lawsuit alleging a retaliatory transfer from the Turney Center prison to BCCX. Defendant Fuller represented Defendants in that suit. Defendant Fuller submitted filings in the Turney Center lawsuit that displayed animosity toward Plaintiff, including the filing of a motion that sought to have Plaintiff declared a vexacious litigator. Defendant Fuller also opposed injunctive relief that Plaintiff requested by submitting Defendant Grimes's affidavit stating that any prison disciplinary

5

report issued to Plaintiff that was later dismissed had been been removed from Plaintiff's institutional file [Doc. 8 ¶¶ 20-28].

Plaintiff directs his next contentions to this instant civil rights case, maintaining that he had prepared a draft of the complaint on a computer provided for use of inmates in the BCCX annex and that, afterwards, Defendant Odenberger, acting on Defendant Cobble's order, seized the computer. Later, Defendant Odenberger refused to print files contained on the computer to enable Plaintiff to reply to a summary judgment motion filed in the Turney Center lawsuit. Because Plaintiff had no copies of his Turney Center suit files, he was required to seek additional time to file a reply in that suit and to request an order compelling the return of his legal work. Plaintiff's requests in the Turney Center lawsuit are still pending. Plaintiff maintains that the seizure of the computer was a step taken in furtherance of a conspiracy to curtail Plaintiff's lawsuits, grievances, and complaints and to retaliate for such.

## III. LAW AND ANALYSIS

### A. Official/Individual Capacity Claims for Damages

Plaintiff has named as Defendants the Tennessee Board of Parole, members of the Parole Board, TDOC employees, Parole Board and TDOC attorneys, and attorneys with the Tennessee Attorney General's Office. Defendant Parole Board is an agency of the State of Tennessee and the remaining Defendants are employees of that agency and other State of Tennessee agencies, such as the TDOC, or the Tennessee Attorney General's Office. All Defendants have been sued in both their official and individual capacities.

However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). This means that

"neither a State nor its officials acting in their official capacities are 'persons' under § 1983," who are subject to suit for damages within the terms of § 1983. *Id.*; *see also Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (citing *Will*, 491 U.S. at 71).

Additionally, the Eleventh Amendment to the United States Constitution bars actions in federal court by citizens against their own state, and this bar extends to a state agency in cases where state funds are potentially involved and to its employees, when sued in their official capacities. *Will*, 491 U.S. at 71.

Hence, the Court concludes that Plaintiff's claims against the Tennessee Board of Parole and all other Defendants in their official capacities are not alleged against "persons" within the terms of § 1983 and that the suit for damages against them in their official capacities is barred by the Eleventh Amendment.

Furthermore, the amended pleading also contains claims asserting that Defendants violated Plaintiff's constitutional rights, including his rights to due process, to access the courts, to equal protection, and not to be subjected to cruel and unusual punishments by denying him parole and by conspiring to deny him parole to retaliate against him for filing lawsuits, grievances and complaints. These claims cannot serve as a springboard for an award of damages against Defendants in their individual capacities.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that an action for damages for "harm caused by actions whose unlawfulness would render a state conviction or sentence invalid" is not cognizable unless the plaintiff can show that his conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state [court], or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87, 489. *Heck*'s "'favorable termination' requirement is necessary to prevent inmates from doing indirectly

through damages actions what they could not do directly by seeking injunctive relief—challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute." *Nelson v. Campbell*, 541 U.S. 637, 646–47 (2004).

The *Heck* rule, however, does not apply to "a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004). Even so, "§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement" are not considered "appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486.

The *Heck* doctrine applies to a claim challenging the denial of parole. *Noel v. Grzesiak*, 96 F. App'x 353, 354 (6th Cir. 2004) ("*Heck* 'applies to proceedings that call into question the fact or duration of parole or probation.'" (quoting *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996)); *see also Portis v. Mich. Dep't of Corr.*, 82 F. App'x 457, 459 (6th Cir. 2003) (same).

Success on Plaintiff's claims that his parole was denied to retaliate against him for filing lawsuits and grievances and sending letters and that a conspiracy existed to deny him parole would necessarily call into question the duration of his confinement and undermine the Parole Board's decision to deny him parole. Plaintiff has not shown that the decision to deny him parole had been invalidated by either a state or federal court. Until that happens, Plaintiff's claims attacking the decision to deny him parole are not cognizable under § 1983. *Bell v. Ohio Adult Parole Auth.*, 23 F. App'x 478, 479 (6th Cir. 2001) (citing *Heck*, 512 U.S. at 486-87).

Furthermore, with the exception of three Defendants, Plaintiff has not stated a valid claim for retaliation against Defendants. A claim for retaliation requires a plaintiff to establish that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person ordinary firmness from continuing to engage in such conduct; and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff cannot satisfy the third element of retaliation claim by pointing to conduct of those Defendants who did not make the decision to deny him parole. "Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue—that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (citing *Thaddeus-X*, 176 F.3d at 399). Therefore, the conduct of any Defendant who did not make the decision to deny Plaintiff parole cannot be "taken as evidence of a retaliatory motive." *Id.* The decision to deny Plaintiff parole was made by Defendants Duncan, Foulcon, and Rich—all Parole Board members. Thus, not only is Plaintiff's retaliation claim precluded by *Heck*, but also it does not state a claim for retaliation against any Defendant who was not a member of the Parole Board.

Likewise, were Plaintiff to prevail on his claim that he was denied parole for discriminatory reasons, in that other similarly-situated inmates were granted parole, such a ruling would necessarily call into question the duration of his confinement. *See Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (finding that "[f]ew things implicate the validity of continued confinement more directly than the allegedly improper denial of parole"). Additionally, if this Court were to hold that the denial of parole violated Plaintiff's rights of access to courts, to due process, and to equal protection, and not to be subjected to cruel and unusual punishment, that holding, undeniably, would undermine his continued incarceration. Hence, the *Heck* rule bars these claims too.

Finally, Plaintiff alleges that Defendants engaged in a civil conspiracy to retaliate against him to deny him release on parole as a reprisal for his filing the Public Records Act requests, the

9

Turney Center lawsuit, and the Parole Board lawsuit [Doc. 8, ¶¶ 50-51]. To the extent that this claim survives *Heck* or the other legal impediments discussed above, a civil conspiracy, as explained by the Sixth Circuit, "is an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). To prevail on his civil conspiracy claim, Plaintiff must plead his claim with specificity, showing "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)). Civil conspiracy pleading standards are "relatively strict," *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008), and, impliedly, difficult to satisfy.

To illustrate the existence of the conspiracy, Plaintiff maintains that "[o]n information and belief," Defendants Fuller and Grimes agreed to replace records of a disciplinary report that had been dismissed in Plaintiff's institutional file and/or provided such to the Parole Board to retaliate against him [Doc. 8 ¶ 52]. Similarly, Plaintiff contends that Defendants Duncan, Faulcon, Rich, McHale, Clark, Beard, and Brough agreed to deny Plaintiff parole in retaliation for his filing lawsuits, especially the Parole Board lawsuit, and that the denial of parole was party motivated by the disciplinary report included improperly in his parole file [Doc. 8 ¶¶ 51, 87].

Here, Plaintiff fails to meet the specificity requirements of a civil conspiracy claim because he has provided no factual allegations to link Defendants "to any common act designed to deprive [plaintiff] of [his] constitutional rights." *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 541 (6th Cir. 2002). Even if the Court assumes, as it must, that all the conduct occurred as alleged in the complaint, "there is no evidence from which to infer that the defendants acted in

concert in so doing." *Spadafore*, 330 F.3d at 854. The Court is not required to conjure up unpled facts, *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988), and Plaintiff's assertion of the existence of a civil conspiracy lacks merit, is conclusory, and fails to state a § 1983 claim for relief. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987) (holding that vague, conclusory accounts of a conspiracy and unconstitutional behavior are insufficient to state a civil rights claim); *see also Heyne*, 655 F.3d at 563–64 (characterizing the allegation that "Defendants have conspired among themselves and with others unnamed . . . to knowing and intentionally deny [Plaintiff's] constitutional rights" as a legal conclusion "masquerading as [a] factual allegation[ ]").

Because *Heck* bars Plaintiff's claims that the denial of his parole was unconstitutional, all claims alleged against Defendants in their personal capacities for damages for a retaliatory or conspiratorial denial of parole are also barred by *Heck* and, even if not barred by *Heck*, fail to state viable claims under § 1983.

Similarly, Plaintiff's amended complaint states that "[t]his is a civil rights action . . . for declaratory and injunctive relief under 42 U.S.C. §§ 1983, 1985, and 1986" [Doc. 8 at 1]. "To state a claim under § 1985(2), a plaintiff must show either: (1) the existence of a conspiracy to use threat, force, or intimidation of a witness or party to obstruct justice in federal court or (2) class-based invidious discrimination." *Ellison v. Leffier*, No. 93-2606, 1994 WL 276926, at *1 (6th Cir. June 21, 1994) (internal citations omitted). "Conspiracy claims under § 1985(3) must be pleaded with the same specificity as conspiracy claims under § 1983." *Dallas v. Holmes*, 137 F. App'x 746, 752 (6th Cir. 2005). "[T]he failure to prevent 'any of the wrongs conspired to be done' under § 1985" states a cause of action under § 1986. *Jaco v. Bloechie*, 739 F.2d 239, 245 (th Cir. 1984).

Thus, a plaintiff who has alleged a valid claim under § 1985 may seek damages for that violation pursuant to § 1986.

Plaintiff has alleged no viable claims based on a violation of 42 U.S.C. § 1985 because he has not alleged the existence of a conspiracy to use intimidation, force, or threats against a witness or a party for the purpose of obstructing justice in federal courts and because he has failed to allege any intentional discrimination driven by a race-based or class-based animus. Absent a valid § 1985 claim, any such claim asserted under § 1986 fails by definition. *Ellison*, 1994 WL 276926 at *1; *see also Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1230 (10th Cir. 1990) (observing that § 1986, "which provides an action for neglecting to prevent a violation of Section 1985, is premised upon the existence of a valid Section 1985 claim").

### B. Claims for Injunctive or Declaratory Relief

This leaves only Plaintiff's claims for injunctive or declaratory relief. Here too, *Heck*'s favorable termination rule applies. Plaintiff asks the Court to provide him a new parole hearing within thirty days and to disqualify all Defendants from participating or voting in any future parole hearing he may have [Doc. 8 at 23]. Plaintiff also requests a declaration that Defendants violated his constitutional rights and committed state torts in connection with the denial of parole [*Id.*].

*Heck* bars all claims for injunctive or declaratory relief that would necessarily undermine the denial of parole. ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).

It is clear that granting Plaintiff a new parole hearing, declaring that Defendants violated his constitutional rights in denying him parole, and enjoining Defendants from participation in any future parole hearings would implicate the validity of his continued confinement. *See Butterfield*, 120 F.3d at 1024. Plaintiff has not indicated that the decision to deny him parole has been overturned or otherwise has been invalidated. Therefore, Plaintiff's claims for injunctive and declaratory relief are precluded by *Heck*'s rule, and such claims, at this time, cannot be entertained in this lawsuit.

**C.    Petition for a Writ of Certiorari**

As noted, the last count in Plaintiff's amended complaint is an application for a writ of certiorari, brought under Tenn. Code. Ann. § 27-8-101, *et seq.*, seeking judicial review of the parole board's decision.

In Tennessee, the decision whether to grant parole is within the discretion of the Board of Parole. *Doyle v. Hampton*, 340 S.W. 3d 891, 893 (Tenn. 1960). The only vehicle for obtaining limited judicial review of the Board's decision is a common law writ of certiorari. *Stone v. Tenn. Bd. of Parole*, No. M201601730COAR3CV, 2017 WL 4217164, at *4 (Tenn. Ct. App. Sept. 20, 2017), *perm. app. denied* (Tenn. 2017). Thus, a prisoner who wishes to challenge a parole board's decision to deny him parole may file a petition for a common law writ of certiorari in the Circuit Court for Davidson County, Tennessee. *Wells v. Tenn. Bd. of Paroles*, 909 S.W.2d 826, 827 (Tenn. Ct. App. 1995). If dissatisfied with the ruling of the lower state court, the prisoner may appeal to the Tennessee Court of Appeals. *Id.* The appellate court will issue a writ of certiorari where a prisoner makes a showing that there was "any fundamental irregularity in the Board's procedures" or that "the Board acted illegally, fraudulently, or arbitrarily." *Williams v. Tenn. Bd. of Prob. & Parole,* No. M2006-02336-COA-R3CV, 2007 WL 3132935, at *4 (Tenn. Ct. App. Oct. 26, 2007).

13

To state the obvious, this is a federal forum, not a state court. This Court has no jurisdiction under § 1983 to issue a writ of certiorari finding that the Parole Board acted illegally, fraudulently, or arbitrarily when it denied Plaintiff parole. This "claim" is **DISMISSED** for lack of jurisdiction.

**D.     Supplemental Complaint**

After Plaintiff filed his amended complaint, he moved the Court for leave to file a supplemental complaint and attached thereto his proposed supplemental complaint [Docs. 25 and 25-1]. The supplemental complaint, according to Plaintiff, presents claims for retaliation and interference with his right to access the courts in the instant case and in other cases as well [Doc. 25-1].

The first of two main claims in the proposed supplemental pleading alleges that all Defendants agreed to retaliate against Plaintiff for filing the complaint in this case. The purported retaliation took the form of planting a weapon in Plaintiff's cell to instigate disciplinary charges against him and, thereby, prompt his transfer from the BCCX annex. Plaintiff maintains, by way of background, that his motion for a TRO alleged that Defendant Brown had threatened to "get" Plaintiff by having something planted in Plaintiff's housing area.

Plaintiff contends that, when he was cleared of wrongdoing in connection with the disciplinary charge, Defendants devised another retaliatory scheme by barring BCCX annex inmates from going to the BCCX's Site 2 law library to use computers that have Westlaw access. Plaintiff maintains that, although officials claim that the change in policy was in the interest of security, this explanation is pretextual because annex inmates, including Plaintiff, are still permitted to go to Site 2 to obtain medical care and, while they are there, they may interact freely with the Site 2 inmates. Further, the policy change was applied at first to Plaintiff only.

The second claim is that the annex's law library is inadequate and that a computer that allowed annex inmates Westlaw access was removed based on a decision apparently driven by a cost/benefit analysis as explained by Defendant Settles at a September, 2017 meeting. Plaintiff alleges, once again, that annex inmates are no longer permitted to go from the annex to BCCX's Site 2 law library to use computers that allow access to Westlaw. Along these lines, Plaintiff also alleges that annex inmates must now use a paging system to obtain legal materials.

The paging system, according to Plaintiff, consists of: (1) a request for legal materials; (2) approval of the request, and (3) a response to the request that typically takes five to six days to fulfil. Requests that lack an exact case citation rarely are honored and requests for secondary sources are not honored at all. In addition, Defendant Cagle, a defendant whom Plaintiff seeks to add as a party in his supplemental complaint, requires inmates to pay to view copies of cases printed from Westlaw, even if the inmate returns the copies. Inmates are provided no additional assistance, other than the paging system, to afford them meaningful access to the courts.

Plaintiff claims that, in response to his request for legal materials on gender discrimination, he was supplied with cases involving free-world gender discrimination, rather than prison job gender discrimination—a claim that he wished to pursue but could not pursue because the paging system prevented him from determining whether his claim had merit and, thus, stymied him in determining whether he would risk a strike under the 3-dismissal rule in 42 U.S.C. § 1915(g). Plaintiff's law library request for gender-discrimination materials arose when male inmates, including Plaintiff, were terminated from their skilled positions on inmate work crews at the Tennessee Correctional Academy in Tullahoma, Tennessee, and were replaced with all female inmate work crews. Plaintiff now works in an unskilled position at the prison and makes less money for his work.

Plaintiff argues that claims asserted in the supplemental complaint are substantially related to the original claims in the amended complaint [Doc. 25 at 1]. The Court does not agree.

Federal Rule of Civil Procedure 15(d) provides that a court may permit a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." While courts have broad discretion to allow a supplemental complaint to add new claims and new parties, *see Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226 (1964), generally, courts require some linkage between the claims asserted in the original pleading and those offered in the proposed supplemental pleading. *Keith v. Volpe*, 858 F.2d 467, 476 (9th Cir. 1988); *Diamond Elec., Inc. v. Knoebel Constr., Inc.*, No. CV 5:16-023-KKC, 2016 WL 6518625, at *2 (E.D. Ky. Nov. 2, 2016) (explaining that in considering whether to permit supplementation "courts look to the interrelation of the proposed new claims with those already pending against the defendant"). "A court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts." *Id.*, 2016 WL 6518625, at *2 (quoting *Nottingham v. Peoria*, 709 F.Supp. 542, 544 (M.D. Pa. 1988)).

The heart of Plaintiff's amended complaint was that the denial of his parole was retaliatory and wrongful. Plaintiff proposes to supplement his complaint with a claim that Defendants, including seven new proposed Defendants, agreed to plant a weapon in Plaintiff's housing area to cause him to be charged with a disciplinary infraction. Clearly, the proposed retaliation claim involving a plot to have Plaintiff charged with a disciplinary infraction is not connected to the claims in the amended complaint alleging a retaliatory denial of parole and a conspiracy to deny him parole.

Furthermore, as noted previously, a claim of a civil conspiracy—which essentially is what Plaintiff is asserting in the supplemental complaint—requires some "evidence from which to infer that the defendants acted in concert." *Spadafore*, 330 F.3d at 854. Plaintiff has presented no such evidence in connection with such claims in his proposed supplemental complaint.

Therefore, it would be futile to allow Plaintiff to file a supplemental complaint containing allegations involving a retaliatory conspiracy that would not state a civil conspiracy claim in the first place. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that a motion to amend a complaint under Rule 15(a) may be denied where the proposed amendments would be futile); *Spies v. Voinovich*, 48 F. App'x 520, 227 (6th Cir. 2002) (observing that the standard that applies to a motion to amend under Rule 15(a) likewise applies to a motion to supplement under Rule 15(d)) (citing *to McHenry v. Ford Motor Co.*, 269 F.2d 18, 24 (6th Cir. 1959)).

In addition, leave to supplement may be denied if it would be fairer and more orderly for Plaintiff to bring his new claims in another lawsuit. *See Martinez v. Hiland*, No. 5:13-CV-P182-GNS, 2017 WL 939009, at *2 (W.D. Ky. Mar. 9, 2017) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1229 (11th Cir. 2008)).

That is the case here. The Court concludes that it would be best if Plaintiff presented the claims in his proposed supplemental complaint in a new lawsuit. *Forte v. Cnty. of Merced*, No. 1:11-CV-00318-AWI, 2015 WL 461599, at *6 (E.D. Cal. Feb. 3, 2015) (observing that "[l]eave to file a supplemental pleading will be denied . . . where the supplemental pleading asserts new and distinct claims unrelated to the original complaint and that should be the subject of a separate lawsuit"), *report and recommendation adopted*, No. 1:11-CV-0318 AWI BAM, 2015 WL 3609310 (E.D. Cal. June 8, 2015), *aff'd*, 691 F. App'x 473 (9th Cir. 2017). There is nothing to suggest that Plaintiff is unable to assert the proposed supplemental claims in a separate lawsuit.

Therefore, Plaintiff's motion for leave to file a supplemental complaint [Doc. 25] is **DENIED**.

E.  STATE LAW CLAIMS

In addition to his federal claims, Plaintiff brings two state-law claims—one for negligent infliction of emotional distress and one for intentional infliction of emotional distress [Doc. 8 at 1, 21-22]. A court may decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §§ 1367(c)(3). In the Sixth Circuit, the policy is to dismiss such state-law claims. *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (explaining that "[i]f federal claims are dismissed before trial, the state claims generally should be dismissed as well" (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). Because the Court is dismissing Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his state-law claims.

Accordingly, Plaintiff's state-law claims for negligent infliction of emotional distress and intentional infliction of emotional distress are **DISMISSED WITHOUT PREJUDICE**.

F.  PENDING MOTIONS

Plaintiff has filed three motions for a temporary restraining order ("TRO") [Docs. 3, 6, and 28] and a supplement to his first motion for a TRO [Doc. 5]. Plaintiff has also filed a "Motion to Enjoin from Retaliatory Transfer" [Doc. 23], which in substance is a fourth motion for a TRO and which will be treated as such.

Federal Rule of Civil Procedure 65(b) states that a court may issue a TRO without notice to the opposing party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made

to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Although on its face, Rule 65(b)(1) applies to attorneys only, courts have interpreted this requirement as applying to a pro se litigant who seeks a TRO. *Hollowell v. Bornkempt*, No. 3:17-CV-606 JD, 2017 WL 3446676, at *2 (N.D. Ind. Aug. 10, 2017) (listing cases).

Plaintiff has not provided the Court with an affidavit to support issuance of a TRO or with the required written certification. While the Court affords Plaintiff, as a pro se prisoner, some latitude in the drafting of his legal papers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), he is still expected to comply with the relevant rules of procedure. *Felts v. Cleveland Hous. Auth.*, 821 F. Supp. 2d 968, 970 (E.D. Tenn. 2011); *cf. McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") (footnote omitted); *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) (finding no cause for extension of liberal pleading rules applicable to pro se litigants "to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer"). "The requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard, but rather crucial safeguards of due process." *Tchienkou v. Net Tr. Mortg.*, No. CIV.A 3:10-CV-00023, 2010 WL 2375882, at *1 (W.D. Va. June 9, 2010) (citing, *inter alia*, *Jourdan*, 951 F.2d at 109-10).

Because Plaintiff has failed to meet the requirements for a TRO, and to the extent his motions for such are not rendered moot by the dismissal of his lawsuit, the motions for a TRO [Docs. 3, 6, 23, and 28]. are **DENIED** as procedurally inadequate.

Plaintiff's "Motion to Reconsider Sanctions" is **DENIED** [Doc. 21]. In denying Plaintiff's request for sanctions, the Court found that the allegations of misconduct, specifically mail interference on the part of Defendant McBride, were speculative [Doc. 11]; the arguments offered

by Plaintiff in his motion to reconsider remain speculative and do not persuade the Court to revisit that finding or to set a hearing to delve further into the issue of imposing sanctions.

Plaintiff's remaining pending motions are **DENIED** as moot [Doc. 9, "Motion to Order Defendant Cobble to Pay;" Doc. 13, "Motion for Docket Sheet;" Doc. 15, "Motion to Find Defendant Cobble in Contempt of Court;" Doc. 20, "Motion for Name Change;" Doc. 22, "Motion to Subpoena TDOC;" Doc. 26, "Motion for Clerk to Issue Subpoena;" and Doc. 27, "Motion to Replace Documents"].

## IV.   CONCLUSION

For all the above reasons, this case will be **DISMISSED** because Plaintiff has sued Defendants who enjoy Eleventh Amendment immunity from money damages and because he has failed to state a claim against Defendants based on the denial of parole. *See* 28 U.S.C. § 1915(e)(2)(B); § 1915A(a); *see also Hunt v. Michigan*, 482 F. App'x 20, 22 (6th Cir. 2012) (a claim barred by *Heck* is properly dismissed for failure to state a claim), *Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (same); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same). In addition, this Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a)(3) and **CERTIFIES** that any appeal from this dismissal would not be taken in good faith.

Therefore, if Plaintiff files a notice of appeal from the dismissal of his lawsuit, he should also either submit the full appellate filing fee of $505.00 or file the appropriate documents seeking leave to appeal *in forma pauperis*.

**AN APPROPRIATE ORDER WILL ENTER**.

ENTER:

s/ Leon Jordan
United States District Judge